420 Mass. 13                                                    13

Massachusetts Highway Dep't *v.* American Fed'n of State, County & Mun. Employees.

MASSACHUSETTS HIGHWAY DEPARTMENT *vs.* AMERICAN
FEDERATION OF STATE, COUNTY AND MUNICIPAL
EMPLOYEES, COUNCIL 93.

Suffolk. December 5, 1994. - April 11, 1995.

Present: LIACOS, C.J., ABRAMS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Arbitration*, Authority of arbitrator, Judicial review, Vacating award.
*Public Policy. Employment*, Termination.

Discussion of judicial review of arbitrators' awards, and consideration of
cases in which an arbitrator's award was challenged on public policy
grounds. [15-20]

An arbitration award reinstating a State employee after his termination by
his employer for possession of a weapon on work premises was not
offensive to public policy safety considerations where the applicable col-
lective bargaining agreement gave the arbitrator authority to impose a
less severe disciplinary sanction than termination (unpaid suspension);
where the award did not violate any criminal statute or policies under-
lying such statutes; and where the award did not violate any policy in
favor of safety in the workplace. [20-21]

CIVIL ACTION commenced in the Superior Court Depart-
ment on February 23, 1993.

The case was heard by *Richard J. Chin*, J., on a motion
for judgment on the pleadings.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Douglas H. Wilkins*, Assistant Attorney General, for the
plaintiff.

*Wayne Soini* for the defendant.

ABRAMS, J. On June 13, 1991, a search by State police of
the locked toolbox of John Arsenault, an employee of the
Massachusetts Highway Department (department), yielded a

loaded handgun with its serial number obliterated.[1] The department had a written policy against having weapons on work premises. Violation of the policy could result in "appropriate disciplinary action up to and including termination." The policy provided that "[a]ll disciplinary actions will be taken in accordance with the provisions of applicable law or collective bargaining agreements." Despite this policy, the department waited approximately one year before terminating Arsenault.[2] After his termination, Arsenault filed a grievance with the defendant union which, pursuant to a collective bargaining agreement with the department, brought the grievance to arbitration.

At the arbitration hearing, Arsenault claimed that he found the gun at work and put it in his toolbox while awaiting advice from a friend, a police officer, on what to do. The arbitrator ruled that, while Arsenault knew that his possession of the gun was wrong and must accept some responsibility for his actions, there was not just cause for his termination.[3] The arbitrator reversed the department's discharge of Arsenault and ordered his reinstatement without back pay. As a result of his termination and subsequent reinstatement, Arsenault suffered a suspension without pay for seven months and ten days.

On February 23, 1993, the department sought to vacate the arbitrator's award on the ground that it "violates the Commonwealth's explicit, well-defined, and dominant public policy against the unauthorized possession of handguns" and that under G. L. c. 150C, § 11 (a) (3) (1992 ed.), "the arbitrator exceeded his power in rendering an award that is contrary to public safety policy." The Superior Court judge concluded that the department failed to establish any basis for

---

[1] The search of the premises was authorized by the department. Arsenault opened the toolbox at the request of the police.

[2] His termination also was based on his alleged possession of marihuana. That charge, and an arbitrator's dismissal of it, are not at issue here.

[3] The department correctly does not argue that the arbitrator did not use the proper burden of proof. Arbitration awards may not be vacated for errors of law. See infra at 15 & note 4.

420 Mass. 13 15

Massachusetts Highway Dep't *v.* American Fed'n of State, County & Mun. Employees.

vacating the arbitrator's decision. He denied the department's motion for judgment on the pleadings and entered judgment confirming the arbitrator's decision. The department appealed. We transferred the case here on our own motion. We affirm.

"Courts inquire into an arbitration award only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on 'fraud, arbitrary conduct, or procedural irregularity in the hearings.'" *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990), quoting *Marino* v. *Tagaris*, 395 Mass. 397, 400 (1985). Vacation of arbitration awards is limited to the grounds set forth in G. L. c. 150C, § 11.[4] See *Concerned Minority Educators of Worcester* v. *School Comm. of Worcester*, 392 Mass. 184, 187 (1984); *School Comm. of W. Springfield* v. *Korbut*, 373 Mass. 788, 792 (1977). "We do not, and cannot, pass on an arbitrator's alleged errors of law and, absent fraud, we have no business overruling an arbitrator because we give a contract a different interpretation." *Concerned Minority Educators of Worcester, supra* at

---

[4]This section provides, in pertinent part: "Upon application of a party, the superior court shall vacate an award if:

"(1) the award was procured by corruption, fraud or other undue means;

"(2) there was evident partiality by an arbitrator appointed as a neutral, or corruption in any of the arbitrators, or misconduct prejudicing the rights of any party;

"(3) the arbitrators exceeded their powers or rendered an award requiring a person to commit an act or engage in conduct prohibited by state or federal law;

"(4) the arbitrators refused to postpone the hearing upon a sufficient cause being shown therefor or refused to hear evidence material to the controversy or otherwise so conducted the hearing, contrary to the provisions of section five as to prejudice substantially the rights of a party;

"(5) there was no arbitration agreement and the issue was not adversely determined in proceedings under section two and the party did not participate in the arbitration hearing without raising the objection; but the fact that the award orders reinstatement of an employee with or without back pay or grants relief such that it could not grant or would not be granted by a court of law or equity shall not be ground for vacating or refusing to confirm the award." G. L. c. 150C, § 11 (*a*) (1992 ed.).

187. "Th[is] policy of limited judicial review is reflective of the strong public policy favoring arbitration." *Plymouth-Carver Regional Sch. Dist., supra* at 1007.

"Arbitration, it is clear, may not 'award relief of a nature which offends public policy *or* which directs or requires a result contrary to express statutory provision'" (emphasis added). *Plymouth-Carver Regional Sch. Dist., supra* at 1007, quoting *Lawrence* v. *Falgarano,* 380 Mass. 18, 28 (1980).[5] Such an award is beyond the arbitrator's powers and is therefore subject to vacation under G. L. c. 150C, § 11 (*a*) (3). See *Boston* v. *Boston Police Patrolmen's Ass'n,* 8 Mass. App. Ct. 220, 227 (1979). The Massachusetts cases vacating an arbitrator's award on public policy grounds have addressed awards which directly conflicted with a statutory limit on, or delegation of power. See *Watertown Firefighters, Local 1347* v. *Watertown,* 376 Mass. 706, 713-714 (1978); *School Comm. of Hanover* v. *Curry,* 369 Mass. 683, 685 (1976); *Boston Police Patrolmen's Ass'n, supra* at 226. Our cases have not addressed the type of public policy at issue.

We turn to decisions of other courts to determine the breadth of the public policy exception. To be vindicated, public policy "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.'" *W.R. Grace & Co.* v. *Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 766 (1983), quoting *Muchany* v. *United States,* 324 U.S. 49, 66 (1945). See, e.g., *United Paperworkers Int'l Union* v. *Misco, Inc.,* 484 U.S. 29, 43 (1987); *Department of Cent. Management Servs.* v. *American Fed'n of State,*

---

[5]The defendant argues that the department waived the issue of public policy by not raising it at arbitration. That argument is misplaced. "[T]he question of public policy is ultimately one for resolution by the courts." *W.R. Grace & Co.* v. *Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers,* 461 U.S. 757, 766 (1983). If the arbitration award violates public policy, "we are obliged to refrain from enforcing it." *Id.*

420 Mass. 13                                                    17

Massachusetts Highway Dep't *v.* American Fed'n of State, County & Mun. Employees.

*County & Mun. Employees*, 245 Ill. App. 3d 87, 94 (1993); *Social Servs. Union/AFN, SEIU Local 535* v. *Alameda County Training & Employment Bd.*, 207 Cal. App. 3d 1458, 1465 (1989).

In a case somewhat analogous to the present case, the Supreme Court upheld an arbitrator's award reinstating an employee who was fired for having traces of marihuana in his automobile parked at the workplace. *United Paperworkers Int'l Union* v. *Misco, Inc., supra* at 44. The Supreme Court rejected the argument that the public policy against operating dangerous machinery under the influence of drugs required termination. *Id.* It stated that, "[a]lthough certainly such a judgment is firmly rooted in common sense, . . . a formulation of public policy based only on 'general considerations of supposed public interests' is not the sort that permits a court to set aside an arbitration award that was entered in accordance with a valid collective bargaining agreement." *Id.*

The public policy exception does not address "disfavored conduct, in the abstract, but [only] disfavored conduct which is *integral to the performance of employment duties*" (emphasis in original). *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 671 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989). "Where the person performs his employment duties and, *in doing so*, violates standards, restraints and restrictions on conduct, clearly and explicitly established by the people in their laws, a requirement that the employer suffer that malperformance and not discharge the offender does itself violate . . . public policy" (emphasis in original). *Id.* at 674. Arbitration awards reinstating discharged employees are thus not upheld if the public policy relates to the worker's employment and the "offense [goes] to the heart of the worker's responsibilities." *United States Postal Serv.* v. *American Postal Workers Union*, 736 F.2d 822, 823, 825 (1st Cir. 1984) (employee embezzled money from the post office in violation of statutes specifically forbidding such conduct by postal employees and the public trust in the post office). In such cases, "it is the employee *qua* employee

who is the wrongdoer. It is [the employee's] employment which made his [conduct] violate law and public policy. [He] could not correct his offensive conduct without altering the performance of his employment duties. He could not continue his offensive conduct and yet perform his employment duties legally. Furthermore, [the employer] could not permit [him] to continue to perform his employment duties while his offensive conduct continued, without being an accessory to the wrongdoing." *Delta Air Lines, supra* at 671.

Arbitration awards reinstating discharged employees also are vacated if the award violates a public policy which relates to the employee's job and which exists because the job itself makes the employee's conduct an immediate threat to the general public. See, e.g., *Exxon Shipping Co.* v. *Exxon Seamen's Union*, 993 F.2d 357, 367 (3d Cir. 1993) (helmsman of oil tanker tested positive for drugs after ship ran aground; "we emphasize . . . the potentially disastrous effects of a major oil spill on the environment. . . . The magnitude of possible harm to the public distinguishes this case from those upholding arbitration awards" [footnote omitted]); *Gulf Coast Indus. Workers Union* v. *Exxon Co., U.S.A.*, 991 F.2d 244, 252 (5th Cir.), cert. denied, 510 U.S. 965 (1993) (technician at petro-chemical refinery tested positive for drugs; "petro-chemical refineries are dangerous places; there is no margin for error. . . . Such assignments [as the employee's] have the capacity to place thousands of people, as well as the surrounding environment, at risk"); *Delta Air Lines, supra* at 668 (air line pilot flew while intoxicated); *Iowa Elec. Light & Power Co.* v. *Local Union 204 of the Int'l Bhd. of Elec. Workers*, 834 F.2d 1424, 1427 n.2 (8th Cir. 1987) (nuclear power plant worker violated safety regulations: "In contrast to [ ] safety rules . . . designed to protect employees inside the . . . plant — are the safety rules . . . designed to protect not only employees, but also the general public"); *Amalgamated Meat Cutters & Butcher Workmen, Local Union 540* v. *Great W. Food Co.*, 712 F.2d 122, 124 (5th Cir. 1983) (policies against drunk driving "become even more compelling when the driver is regularly em-

ployed to course the highways in a massive tractor-trailer rig"). Arbitration awards that reward or encourage illegal conduct are also vacated. See *Trustees of Community College Dist. No. 508* v. *Cook County College Teachers Union, Local 1600*, 74 Ill. 2d 412, 425-426 (1979) (vacating an arbitrator's award favoring employees who participated in an illegal strike over those who did not).

Contrary to the foregoing cases, arbitration awards reinstating employees are upheld if the employees' conduct, even though harmful, was not related to their job activities and did not pose a special risk to the public due to their job. See *United Paperworkers Int'l Union, supra* at 44 (possessing marihuana at work); *United States Postal Serv.* v. *National Ass'n of Letter Carriers*, 839 F.2d 146 (3d Cir. 1988) (postal employee, while off duty, fired gun shots at postmaster's automobile); *Florida Power Corp.* v. *International Bhd. of Elec. Workers, Local 433*, 847 F.2d 680, 681 (11th Cir. 1988) (employee arrested for drug use while off duty); *Local 453, Int'l Union of Elec., Radio & Mach. Workers* v. *Otis Elevator Co.*, 314 F.2d 25, 26 (2d Cir.), cert. denied, 373 U.S. 949 (1963) (gambling at work).

If an award is permissible, even if not optimal for the furtherance of public policy goals, it must be upheld. Arbitration awards reinstating employees are therefore upheld if the public policy, while disfavoring the employees' conduct, does not require dismissal. See, e.g., *National Ass'n of Letter Carriers, supra* at 149-150 ("a policy in favor of protecting co-workers and customers from [the employee's] violent conduct [assuming, *arguendo*, that such a policy is properly ascertained] does not require his discharge for its fulfillment"); *Lansing Community College* v. *Lansing Community College Chapter of the Michigan Ass'n for Higher Educ.*, 161 Mich. App. 321, 333 (1987), vacated and remanded, 429 Mich. 895, reaffirmed without decision, 171 Mich. App. 172 (1988) (award reinstating professor who smoked marihuana with students did not violate public policy; "neither the agreement, as so interpreted, nor the award violates the well-defined public policy against the use of illegal narcotics. The

arbitrator merely interpreted the agreement as providing violators such as [the professor] a second chance at employment following the imposition of a form of punishment less severe than permanent discharge"); *Amalgamated Transit Union, Div. 1300* v. *Mass. Transit Admin.*, 305 Md. 380, 390 (1986) ("public policy against drunk driving is not so extreme" as to require firing bus driver who drove with alcohol on breath instead of suspending him without pay for over eight and one-half months).

In the present case, the arbitration award does not violate a well-defined and dominant public policy, ascertained from laws and legal precedents. The department's written policy against possessing weapons at work did not mandate that the employee be discharged. See *supra* at 14. The policy allowed for the imposition of a penalty less severe than permanent discharge, and said that disciplinary actions would be taken in accordance with applicable collective bargaining agreements. The applicable collective bargaining agreement gave the arbitrator the authority to impose a less severe sanction than termination. The department could have had a policy requiring discharge of employees who possess guns at work. It did not.

While Arsenault may have violated criminal statutes, such as G. L. c. 269, §§ 10 & 11C (1992 ed.),[6] and the policies the statutes embody, the arbitration award reinstating him did not. The criminal laws do not dictate that an employee who is found to possess an illegal firearm must be terminated. The policies embodied in the criminal laws do not relate to Arsenault's employment. Arsenault's conduct was wrong in itself; his employment did not make it any more so. His possession of the gun at work did not go to the heart of his employment duties. See *American Postal Workers Union*, *supra* at 825. The policy against the possession of unlicensed and otherwise illegal handguns was meant to be vindicated,

---

[6]Arsenault was charged with possession of a handgun with an obliterated serial number, G. L. c. 269, § 11C (1992 ed.), and unlicensed possession of a handgun, G. L. c. 269, § 10 (1992 ed.). The former charge was continued without a finding and the latter charge was dropped.

and may be vindicated, through the criminal justice system. See *Otis Elevator Co., supra* at 29. This policy does not dictate that a violator also lose his job.[7]

The arbitration award also did not violate the policy in favor of safety in the workplace. See *Barrett* v. *Rodgers,* 408 Mass. 614, 619 (1990) (employer has duty to provide safe work environment); *Longever* v. *Revere Copper & Brass, Inc.,* 381 Mass. 221, 223 (1980) ("Among the common law duties placed on an employer was the responsibility to provide a safe place to work"). As a result of the time lag between firing and reinstatement, the arbitration award had the effect of an unpaid suspension for seven months and ten days. The arbitrator, as final judge of the proper means of discipline, concluded that this, in addition to a record of wrongful conduct, was sufficient disciplinary action.[8] While Arsenault's conduct "would have provided sufficient grounds for an arbitrator to find 'just cause' for discharge, we recognize that the parties bargained for the arbitrator's interpretation of the contract and that even our strong disagreement with the result does not provide sufficient grounds for vacating the arbitrator's award." *State Auditor* v. *Minnesota Ass'n of Professional Employees,* 504 N.W.2d 751, 757-758 (Minn. 1993).

*Judgment affirmed.*

---

[7]Criminal charges and termination of employment are unrelated. Each furthers different policies and imposes different penalties. The parties are different, as are the rules of evidence and burden of proof. An employer need not await the outcome of a criminal trial before terminating an employee who violates clear workplace rules. Termination need not be contingent on the outcome of criminal litigation.

[8]In determining that the safety of the work environment was not sufficiently threatened by Arsenault's behavior to require permanent discharge, the arbitrator could consider the fact that the department waited nearly one year after the gun was discovered before firing Arsenault or bringing lesser disciplinary action such as suspension.