Connolly, Thomas E., J.
This civil action is brought pursuant to ch. 150C, § 11 by the Chief Justice for the Administration and Management of the Trial Court (Trial Court) to vacate the award of an arbitrator that held that the Trial Court did not have just cause to terminate an employee of the Trial Court, namely Leah Goldstein (Goldstein). The arbitrator ordered the termination order be reduced to a written reprimand and that Goldstein be retroactively reinstated with full back pay, benefits and seniority. The plaintiff, Trial Court, has moved for summary judgment and the defendant, Union, has cross moved for summary judgment.
BACKGROUND AND FACTS
The Trial Court is the employer of all clerical employees of the court facilities bureau for purposes of collective bargaining. The Office and Professional Employees International Union, Local 6, AFL-CIO (Union) is the exclusive collective bargaining representative for the unit of administrative and clerical employees in the court facilities bureau.
The subject discharge arose from an incident that occurred on Friday, September 9, 2005 during the lunch break for Ms. Goldstein. It was Ms. Goldstein’s birthday and her co-workers had brought a birthday cake to work to celebrate her birthday with her. Ms. Goldstein was in good spirits and was going out to lunch. Around 11:45 A.M., Dereck Carrier, a maintenance worker and close friend of Ms. Goldstein came into the office. It was a small office in the Worcester courthouse. The atmosphere was jovial with a lot of chit-chat. Ms. Goldstein started to walk out of the office to go to meet someone for lunch, she stopped by *633 Carrier and sat on his knee. Another secretary in the room said “lets see what pops up now.” Ms. Goldstein then repositioned herself so that she was sitting squarely on Carrier’s lap, with her back to him. She wiggled her backside for a few seconds. She got up quickly, said that she was going to lunch and smiled as she walked out of the office. Ms. Goldstein stated that when she got up from her desk to leave, another secretary in the room jokingly said “Why don’t you go sit on Dereck’s lap and make a birthday wish.” There was a supervisor in the room, that supervisor reported the incident and an internal investigation resulted in Ms. Goldstein’s discharge on Friday, October 7, 2005.
The Director of Court facilities (Director), Stephen Carroll, determined that discharge, as opposed to any lesser form of discipline, progressive or otherwise, was the appropriate penally given the physical contact and the violation of Carrier’s physical space.[1] The record indicates that Carrier did not complain to anyone concerning the incident. In fact, on October 21, 2005, Carrier wrote a letter regarding the situation, in which he stated that the termination of Goldstein was not fair or justifiable. Carrier stated that he had not filed a sexual harassment complaint against Goldstein, whom he regarded as a close colleague and good friend. Carrier further stated that he did not feel violated, harassed or embarrassed in any manner, and stated that both he and Goldstein were on their lunch break at the time of the incident.
A grievance was filed, and after hearing was denied. The matter was then appealed to arbitration by the Union on behalf of Ms. Goldstein as provided for in the collective bargaining agreement. A hearing was held on March 26, 2006 before Mark L. Irvings, Arbitrator at the American Arbitration Association.
Arbitrator Irvings issued his Award of Arbitration (17 pages) on June 6, 2006. Arbitrator Irvings found that the Trial Court did not have just cause to terminate Ms. Goldstein and ordered that her termination be reduced to a written reprimand and that she be retroactively reinstated with full back pay, benefits and seniority, less interim earnings.
The plaintiff here, Chief Justice for Administration and Management of the Trial Court of the Commonwealth on July 14, 2006 filed this civil action under ch. 150C, Sections 11 through 15, to vacate the Arbitrator’s Award alleging that the findings and conclusions made by the arbitrator indicate or require the finding that the termination was for just cause and the order to reinstate Ms. Goldstein violates “public policy” and the Trial Court’s obligation “to have a workplace free of sexual harassment.”
DISCUSSION
Courts are generally permitted a very narrow scope of review and inquiry into an arbitration award, and are only to determine if the arbitrator has exceeded the scope of his authority, or decided the matter based on fraud, arbitrary conduct, or procedural irregularity in the hearings. Massachusetts Highway Dep’t v. American Fed’n of State, County & Mun. Employees, Council 93, 420 Mass. 13, 15 (1995), citing Plymouth-Carver Regional Sch. Dist. v. Farmer & Co., 407 Mass. 1006, 1007 (1990). Courts are reluctant to overturn arbitration awards, especially when the parties have chosen to arbitrate, because of the strong public policy favoring arbitration, and courts’ deference to arbitration awards are more pronounced where arbitration forms part of a collective bargaining agreement, such as in the present case. Boston v. Boston Police Patrolmen’s Association (“DiSciullo”), 443 Mass. 813, 817. Courts are strictly bound by an arbitrator’s findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing. City of Lynn v. Thompson, 435 Mass. 54, 61 (2001). Courts are even bound by an arbitrator’s findings and conclusions which are believed to be grossly erroneous. Id. at 62, “An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference.” City of Lynn, 435 Mass. at 62, citing Delta Air Lines, Inc. v. Air Line Pilots Ass’n, Int’l, 861 F.2d 665, 670 (11th Cir. 1988). The collective bargaining agreement provides that “[T]he decision or award of the arbitrator shall be final and binding in accordance with Mass. Gen. Laws, chs. 150C and 150E.” Collective Bargaining Agreement, p. 8.
Here, the Trial Court, in essence, is claiming that the order to reinstate Ms. Goldstein violates public policy, and hence the arbitrator exceeded his powers. The Supreme Judicial Court applies a stringent, three-part analysis to establish whether the narrow public policy exception requires the Court to vacate an arbitrator’s decision. To meet the criteria for application of the public policy exception, the public policy in question “must be well defined and dominant, and is to be ascertained ‘by reference to the laws and legal precedents and not from general considerations of supposed public interests.’ ” Massachusetts Highway Dep’t v. American Fed’n of State, County & Mun. Employees, Council 93, supra at 16, quoting W.R. Grace & Co. v. Local Union 759, Int’l Union of United Rubber, Cork, Linoleum & Plastic Workers, 461 U.S. 757, 766, (1983). “The public policy exception does not address ‘disfavored conduct, in the abstract, but [only] disfavored conduct which is integral to the performance of employment duties’ ” (emphasis in original). Id. at 17, quoting Delta Air Lines Inc. v. Air Line Pilots Ass’n, Int’l, supra at 671. “Finally, we require a showing that the arbitrator’s award reinstating the employee violates public policy to such an extent that the employee’s conduct would have required dismissal.” Bureau of Special Investigations v. Coalition of Pub. Safety, supra at 605, citing Massachusetts Highway Dep’t v. American Fed’n of State, County & Mun. *634 Employees, Council 93, supra at 19." City of Lynn, 435 Mass. at 62-63.
“Arbitrators are limited to considering matters encompassed by the collective bargaining agreements. Arbitrators do not have the authority to take into consideration the public policy implications of their awards . . . Also, courts may not enforce contracts or agreements that violate strong policy. Therefore, the question of public policy is ultimately one for resolution by the Courts and not by arbitrators.” Bureau of Special Investigations v. Coalition of Public Safety, 430 Mass. 601, 603 (2000). See: Delta Air Lines, Inc. v. Air Pilots Ass’n Int’l, 861 F.2d 665, 670 (11th Cir., 1988) (“[E]xamples of arbitration results that so offend public policy that they should be set aside by a court are not readily to be found. This is not surprising. An arbitrator’s result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet it may not be subject to court interference. The offending arbitrator’s award which properly results in our setting it aside must be so offensive that one is to be seen only rarely.’’) Because the public policy “doctrine allows courts to bypass the normal heavy deference accorded to arbitration awards and potentially to ‘judicialize’ the arbitration process, the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy.” E.I. DuPont de Nemours & Co. v. Grasselli Employees Indep. Ass’n of E. Chicago, 790 F.2d 611, 615 (7th Cir.), cert. denied, 479 U.S. 853, 107 S.Ct. 186, 93 L.Ed.2d 120 (1986); Bureau of Special Investigations v. Coalition of Public Safety, supra at 604.
The plaintiff, Trial Court and the defendant, Union negotiated a collective bargaining agreement which gave the arbitrator the authority to impose a less severe sanction than termination. The arbitrator is given final authority to sanction employees who commit misconduct such as was committed in this case, which award shall be final and binding on the Trial Court and on the Union.
Here, the arbitrator in fact found that Ms. Goldstein’s behavior on Friday, September 9, 2005 during her lunchtime break breached the policy against sexual harassment in the workplace. The written sexual harassment policy defines unlawful sexual harassment as, in part, “uninvited intimate physical contact such as touching . . . [or] brushing.” The incident occurred in the workplace during lunch and was witnessed by other employees. Therefore, the employer, the Trial Court had just cause to impose some level of discipline in response to Ms. Goldstein’s action. The arbitrator went on and held that the termination was grossly disproportionate to the offense. The arbitrator points out other cases involving significant sexual harassment involving Trial Court employees and the sanction imposed. One involved a man named LoGrasso who had grabbed a woman in an isolated location and sucked her neck, putting the woman in fear for which offenses he received a ten-day suspension. A person named Wager-Felix received a ten-day suspension for protracted sexually charged behavior towards Ms. Goldstein herself, together with inappropriate behavior towards his supervisor and repeated instances of time sheet falsification. To give a 10-day suspension to Wager-Felix for his sexually charged behavior, his inappropriate behavior towards his supervisor and his falsification of his time sheets and to give Ms. Goldstein a termination notice for a few seconds of joking around on her lunch hour is incomprehensible to this judge. Suffice it to say, something is wrong and grossly unfair in the actions taken by the Trial Court against Ms. Goldstein. The arbitrator saw what was wrong and grossly unfair here, namely the grossly disproportionate penalty of termination for the offense involved.
Under the present facts, the only way the Commonwealth may have the Court vacate the arbitrator’s decision is by use of the “public policy” exception. As indicated above, one of the three matters that are necessary to be present for the public policy exception to apply is “only when the disfavored conduct is integral to the performance of employment duties.” The public policy is narrowly construed. “The public policy exception does not address disfavored conduct in the abstract, but [only] disfavored conduct which is integral to the performance of job duties.” Mass. Highway Dep’t v. American Fed'n of State, County & Mun. Employees, Council 93, 420 Mass. 13, 17 (1995). “Arbitration awards reinstating employees are upheld if the employee’s conduct, even though harmful, was not related to their job activities. The question to be answered is not whether the employee’s disfavored conduct violates public policy, but whether the Arbitration Award to reinstate [her] does so. In other words, there must be a showing that the arbitrator’s award reinstating the employee violates public policy to such an extent that the employee’s conduct would have required dismissal.” Bureau of Special Investigations v. Coalition of Pub. Safety, 430 Mass. 601, 605 (2000). Here, there is no showing that Ms. Goldstein’s action of a few seconds were related in any way to her job activities or would have required dismissal.
The case of United Paperworks v. Misco, Inc., 484 U.S. 29 (1987), is illustrative of this point. There the employee was caught in the company parking lot smoking marijuana. The employer fired Misco, the arbitrators ordered him reinstated, the District Court reversed the arbitrator on public policy grounds, the Court of Appeals for the Sixth Circuit affirmed the District Court, and the U.S. Supreme Court reversed and affirmed the arbitrator because the private smoking of marijuana in a private parking lot is not integral to the performance of his job duties.
The case of Florida Power v. Intern. Broth. Elec. Wkrs., 847 F.2d 680 (11th Cir., 1988), is equally *635 illustrative. There an employee was arrested for driving while intoxicated when he was off company time. Drugs were found in his car at the time of arrest. The employer found out about the arrest, investigated it and terminated the employee. On going to arbitration, the arbitrator ordered the employee reinstated. The employer went to the U.S. District Court which vacated the reinstatement, in part on public policy grounds. The Court of Appeals for the Eleventh Circuit reversed the District Court and affirmed the arbitrator’s decision. In Delta Airlines v. Air Line Pilots Assn., 861 F.2d 665, 670 (11th Cir., 1989), the Eleventh Circuit indicated that the facts in Florida Power, supra, suggest that the discharge was for conduct not integral to employment duties.
In the present case, Ms. Goldstein was not involved in duties for her job and was on her lunch hour. This Court cannot see how Ms. Goldstein’s two seconds of “disfavored conduct” could be considered to be integral to the performance of her duties.
This Court has read the pleadings and submissions in this case. It cannot see how the public policy exception would apply in this case. While the Trial Court found that Ms. Goldstein violated the prohibition of sexual harassment in the workplace, in which finding the arbitrator concurred, the punishment imposed by the Trial Court was grossly disproportionate for the facts complained of and very disproportionate from other punishments imposed for far greater, but similar, offenses by male employees of the Trial Court. There is no evidence in this case which would allow or justify the use of the “public policy exception” to vacate the award of the arbitrator. In sum, the Trial Court’s behavior and actions to date towards Ms. Goldstein have been simply very unfair. This Court has no authority, under the facts of this case, to vacate the order of the Arbitrator, whose decision is final and binding to the parties. The Trial Court agreed in the Collective Bargaining Agreement that the arbitrator’s decision would be final and binding. Now it must abide by that agreement.
ORDERS
The Plaintiffs Motion for Summary Judgment is DENIED. The Plaintiffs Petition to Vacate an Arbitrator’s Award is DENIED.
The Defendant’s Motion for Summary Judgment is ALLOWED.
The AWARD of the Arbitrator is AFFIRMED in all respects.

 Carroll was the Director of Court facilities and had no experience in the field of Human Resources. He did not contact anyone in the Human Resources Department for assistance, never reviewed Goldstein’s personnel file or disciplinary record and never asked for any information on what the discipline was that was imposed in similar cases. Carroll indicated only that this is a straightforward case, a “no brainer.”
To allow Carroll to make personnel disciplinary decisions up to and including the termination of a long-time employee without any substantive training, without contacting the Human Resources Department for assistance, without checking the employee’s personnel file and past disciplinary record, and without obtaining any information on what discipline was imposed by the Trial Court in similar cases is just simply unconscionable to this member of the Court.