Cratsley, John C., J.
This matter arises out of a petition the Massachusetts Department of Correction (“Department”) filed against the Massachusetts Correction Officers Federated Union (“Union”) seeking to vacate a March 27, 2006 arbitrator’s award. In his award, the arbitrator upheld the Department’s termination of Sergeant Philip Kane (“Kane”), but overturned the Department’s termination of Officer Walter Fonseca (“Fonseca”) and replaced it with a six-month suspension. The Department alleges that the arbitrator violated G.L.c. 150C, §11 in reducing Fonseca’s discipline and seeks to vacate that portion of the award and reinstate his termination. The matter is now before this Court on the Department’s motion for summaiy judgment pursuant to Mass.R.Civ.P. 56, which will be treated as a petition to vacate/modify the arbitrator’s award.
For the reasons discussed below, the petition is ALLOWED as to Fonseca and the arbitrator’s award as to him is ordered VACATED; the Department’s termination decision is ordered REINSTATED.
PROCEDURAL BACKGROUND
On May 5, 2004, Kane and Fonseca were charged with violating Rules 6D, 10A, and 19C of the Rules and Regulations Governing All Employees of the Massachusetts Department of Correction (“Rules and Regulations”), and 103 CMR 505, entitled “Use of Force.” On Januaiy 28, 2004, the Superintendent of the Massachusetts Alcohol and Substance Abuse Center (“MASAC”) placed Fonseca and Kane on paid administrative leave pending an investigation into allegations that they used excessive force against an inmate. The Department conducted a hearing on June 3, 2004 for each employee pursuant to G.L.c. 31, §41. The Department notified Fonseca via a July 1, 2004 letter that his employment was terminated. The Union challenged the termination through the negotiated grievance procedure provided for in the collective bargaining agreement then in effect. On August 31, 2004, the parties attended a Step III hearing as part of the grievance process. On November 2, 2004, the Department denied the Union’s grievance.
Subsequently, the Union filed Demands for Arbitration on behalf of each grievant. The parties agreed to *161 consolidate Fonseca’s grievance with Kane’s grievance. The Union alleged that the Department violated Article 23 of the collective bargaining agreement between the parties when it terminated Fonseca and Kane from their positions for the reasons stated in the termination letters. Section 1 of Article 23, entitled Arbitration of Disciplinary Action, provides that “No employee who has been employed in Bargaining Unit 4 . . . shall be discharged . . . suspended or demoted for disciplinary reasons without just cause . . . Any discipline imposed shall be consistent with Departmental policy.”
The arbitration hearing took place in November and December of 2005. The arbitrator issued his award on March 27, 2006, finding the Department had just cause to terminate Kane, but did not have just cause to terminate Officer Fonseca and restored Fonseca’s employment plus back pay minus a six-month suspension. On April 26, 2006, the Department brought this case to appeal the reduction of Fonseca’s discipline and to vacate the portion of the arbitration award with respect to Fonseca’s reinstatement. The matter is now before this Court on the Department’s motion for summary judgment, which will be treated as a petition to vacate/modify the arbitrator’s award.
FACTS
The following is a summary of the facts found by the arbitrator and are relevant to the disposition of this matter.
Kane and Fonseca were correction officers at the Massachusetts Alcohol and Substance Abuse Center (“MASAC”), which provides thirty-day alcohol and substance abuse programs for persons committed under G.L.c. 123, §35 (“commits”). MASAC consists of four housing units, an administration building, an intake building, and a cafeteria. Delta Unit (“Delta”) is one of the four housing units where commits are initially placed and undergo detoxification.[1] Unlike the other units, Delta contains an infirmary staffed by medical personnel who assist commits during detoxification.
Mr. Paul Juliano (“Juliano”) was a thirty-eight-year-old alcohol and heroin addict who, on January 12, 2004, began his third commitment with MASAC. On the morning of January 15, 2004, upon completion of his detoxification treatment, Juliano was cleared by the medical staff to leave Delta. While in the nurse’s station, Juliano took an unattended cup of coffee that belonged to Kane.[2] Shortly thereafter, Kane and Fon-seca escorted Juliano to the shower area.[3] The arbitrator found that “Kane took umbrage at the disappearance of his coffee” and brought Juliano out of the sight of others for the “obvious purpose of inflicting some sort of punishment. . .” Award at 17. Though there is some discrepancy as to the extent of the injuries Juliano suffered, the arbitrator found conclusively that Kane and Fonseca did assault Juliano, causing injuries to him.[4] Id. at 20.
In the Department’s investigation into the events of January 15, 2004 after Juliano reported the assault, the Department asked Kane and Fonseca to submit written reports of their actions that day and interviewed both officers. There is no mention of the assault in either of their reports. During the interviews, both officers also denied that they assaulted Juliano. The arbitrator found that they had falsified the reports and lied to investigators. On May 5, 2004, the Department notified Kane and Fonseca by letter that they were charged with violating the Rules and Regulations and 103 CMR 505 — Use of Force. As the letter provides,
Rule 6D states in part, “Report all infractions of law, rules and orders to a higher authority”;
Rule 10A states in part, “Department of Correction regulations shall only permit an employee to use force against an inmate which is reasonable. Under no circumstances shall an employee use or permit the use of excessive force, or use of force as punishment”;
Rule 19C states in part, “you must respond fully and promptly to any questions or interrogatories relative to the conduct of an inmate, a visitor, another employee or yourself.”
On July 1, 2004 the Department informed Kane and Fonseca that the allegations against them were found to be true and their immediate terminations were supported by just cause. Upon arbitration, the arbitrator found the conduct engaged in by both Kane and Fonseca to warrant termination. However, he determined that because Fonseca was not the ranking officer, was not the primary aggressor, and had no prior disciplinary actions against him, these were mitigating circumstances that “[notwithstanding] the seriousness of his misconduct in this case, he deserves to continue his career.” Id. at 24. The arbitrator issued an award that reinstated Fonseca to his former position and compensated him for lost wages and other benefits, adjusted to account for the substituted six-month suspension.
DISCUSSION
This Court finds that arbitrator exceeded his authority and rendered an award that is inconsistent with law and public policy. General Laws c. 150C, §11 prescribes the basis of judicial review for arbitration awards, and states in subsection (3) (a) that the Superior Court shall vacate an award if “the arbitrators exceeded their powers ...” Any award offending public policy “exceeds the powers” of the arbitrator and contravenes the statute. City of Lynn v. Thompson, 50 Mass.App.Ct. 280, 285 (2000). The reasoning is that because generally parties may not enter into contracts which are against public policy, arbitrators may not “award relief of a nature which offends public policy.” Id. at 285. Consequently, any award that is offensive to public policy is subject to being vacated by the courts. Id. at 286.
*162 As Massachusetts courts recognize a strong public policy in favor of arbitration, great deference is given to an arbitrator’s decision and judicial review is limited. See City of Boston v. Boston Police Patrolmen’s Association, 443 Mass. 813 (2005). The strong public policy favoring arbitration requires courts to uphold an arbitrator’s decision even where it is wrong on facts or the law, and whether it is wise or foolish, unclear or ambiguous. Id. at 818. The deference to an arbitrator’s decision is especially pronounced where the choice to arbitrate is part of a collective bargaining agreement. Id. Neither error of fact nor error of law provides grounds for vacating an arbitration award conducted pursuant to a collective bargaining agreement. School District of Beverly v. Geller, 433 Mass. 1101.
Massachusetts courts, however, will overturn an arbitrator’s decision where the arbitrator exceeded his authority by making a decision contrary to public policy or a decision resulting in an outcome contrary to an express statutory provision. See id. Our Supreme Judicial Court (“SJC’j has set forth a three-part test for determining whether the narrow public policy exception applies. First, the public policy in question must be well-defined and dominant. City of Boston, 443 Mass. at 823. This public policy must be “ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests.” Id. at818-19 (citations omitted). Second, conduct that is at issue must not be disfavored in the abstract, but integral to the performance of employment duties. Id. at 819. Finally, the petitioning party must show that the “arbitrator’s award reinstating the employee violates public policy to such an extent that the employee’s conduct would have required dismissal.” Id. at 819 (citations omitted).
The facts of the present case satisfy all three prongs of the public policy exception. First, the SJC explained, in City of Boston, that the public policy requiring police officers to be truthful and obey the law in the performance of their official duties is an explicit, well-defined, and dominant one. Id. at 823. There is also a clear and well-defined policy that termination is appropriate where the “physical safety of the members of the public" is at stake. School District of Beverly, 50 Mass.App.Ct. at 297; see Massachusetts Highway Dept. v. American Fed. of State, County, and Mun. Employees, Council 93, 420 Mass. 13, 18 (1995). Although Fonseca does not interact with the public at large to the same degree as law enforcement officers, this Court does not regard his required truthfulness or obedience to the law to be any less as a correction officer. In my view, the public policy that correction officers should uphold the values of honesty, public safety, and obedience to the law apply in full force to Fonseca. When he assaulted a civil commitant under his care, he violated this explicit, well-defined, and dominant public policy.
Second, the SJC found, in City of Boston, that the police officer’s misconduct went to the heart of his responsibilities when he abused his authority as a police officer. The SJC opined that “(p)eople will not trust the police . . . unless they are confident that police officers are genuine in their determination to uphold the law” and that police legitimacy would be undermined by the public’s knowledge that a police officer who violated the law was reinstated. City of Boston, 443 Mass. at 823. The same is true for correction officers, especially given that most of the civil commits in MASAC are there based upon an application by a family member because the commit is suffering from alcohol or substance abuse. In this context, I find that the public’s confidence in MASAC officers is especially imperative, since the facility serves primarily in a rehabilitative role for its commits. When Fon-seca abused his custodial position and assaulted Juliano, he violated these core principles. Rather than providing assistance to one under his care, he acted to punish and harm him. Such conduct undermines the public’s faith in the integrity of our correction facilities in the Commonwealth. As Fonseca could not have committed his acts but for his position as a correction officer, I conclude his conduct betrays the heart of his responsibilities and is integral to the performance of his employment duties.
In addition, I find that there has been a sufficient showing that the arbitrator’s award reinstating Fon-seca violates public policy to the extent that a lesser sanction would frustrate public policy. Id. While our high courts have not ruled specifically on the issue of “custodial safety,” including the conduct of prison guards towards inmates, the SJC has cited cases from other jurisdictions that show “courts consistently have refused to enforce arbitration awards reinstating public safety officials who have been found to have abused their power illegally and to the detriment of those they are entrusted to protect.” Boston, 443 Mass. at 822 n.10.
In a recent case, the Court of Appeals did find that an arbitrator’s award revoking the termination of a correction officer who failed to both report an assault of an inmate and cooperate with the investigation did not satisfy the third prong of the test. Sheriff of Suffolk County v. Jail Officers & Employees of Suffolk County, 60 Mass.App.Ct. 903, 905 (2007) (internal quotes omitted). In reaching its ruling, the appellate court stated that the correction officer in question did not himself assault an inmate and was not concealing the truth in order to escape his own misconduct. Therefore, the situation did not “present one of those rare instances in which an arbitrator’s award must be vacated . . .” Id. at 905. The circumstances are very different here.
The arbitrator found that Fonseca, in the course of working in a hospital environment with sick civil commitments, abused his authority and physically *163 assaulted one who was entrusted to his care; subsequently, he falsified reports to cover up his own misconduct. These actions violated the rules and regulations of the Department as well as that of the Commonwealth. Given these circumstances, I believe the arbitrator’s decision to reinstate him is contrary to an explicit, well-defined, and dominant public policy.
The arbitrator’s decision to sustain the termination of Kane furthers this certainly. In his written opinion, the arbitrator does not state any material distinction between the involvement of Kane and Fonseca in the assault on Juliano. In fact, the arbitrator expressed similar views concerning Kane and Fonseca:
There is perhaps no more serious charge against correction or police officers than using excessive force ... or using force to punish someone who has been entrusted to their care. Both officers testified they welcomed working in a hospital atmosphere where they were working with sick civil commits ... Yet they violated their trust by assaulting Mr. Juliano who was not fully in control of his actions and who posed no threat to them. I find that the Department has shown that termination constitutes an appropriate penalty for assaulting a commit and lying about it.
Award at 23.
These views are consistent with my own evaluation of the facts. While I accept the entirety of the arbitrator’s findings of fact and his views relating to Fonseca’s guilt, I cannot agree that the mitigating circumstances the arbitrator relied on warrant a reduction in Fonseca’s discipline. It is true that Fonseca was not the ranking officer or the primary aggressor that instigated the assault; nonetheless, he actively participated in the incident. He also falsified reports and denied his misconduct to his superiors. I acknowledge that the arbitrator, in reducing Fonseca’s discipline, relied partly on his clean service record. However, the lack of past disciplinary actions is not sufficient, in my view, to override the public policy concerns in this case.
In summary, I find the portion of the arbitrator’s award that reinstates Fonseca to be in violation of an explicit, well-defined, and dominant public policy. His misconduct was integral to the performance of his employment duties[5] and any sanction lesser than termination would frustrate that public policy. Therefore, the arbitrator did exceed his authority pursuant to G.L.c. 150C, §11(a)(3) in issuing the award reducing Fonseca’s termination.
ORDER
For the reasons discussed above, the Department’s motion for summary judgment is ALLOWED and the portion of the March 27, 2006 arbitrator’s award concerning Officer Walter Fonseca is VACATED, and the order of termination issued by the Department of Correction on July 1, 2004 is REINSTATED.

Commits usually spend three to six days in Delta before they are cleared by a physician to move to one of the other three units where they are housed for the remaining portion of their thirty-day commitment.

In addition to Jullano’s own account, the arbitrator found credible two other witnesses who testified about the morning’s events. A staff member testified that at approximately 9:30 A.M., Kane’s coffee was missing, while another commit testified that that Kane later came to the intake building to smell the plastic drinking cups of commits.

The arbitrator found that though interactions between officers and commits are not unusual, two officers escorting one commit to the shower area after he has been cleared to leave Delta, especially when there are only three officers for sixty-eight commits, is not routine.

The arbitrator rejected the Union’s claim that Juliano’s new injuries, if any, were self-inflicted.

The Department, in its brief, also raises the issue that Fonseca can no longer perform an essential function of his job, since he will be unable to testify effectively in future court proceedings on behalf of the Department, given that his credibility will be called into question. The merits of the Department’s arguments on this issue will not be reached by this Court as I find there are other grounds sufficient to vacate the arbitrator’s award.