CITY OF LYNN *vs.* TERRANCE THOMPSON.

Essex. May 10, 2001. - September 5, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Arbitration,* Judicial review, Police. *Public Policy. Police,* Discharge.

This court, absent any basis to set aside an arbitrator's express determination that a police officer had not used excessive or unnecessary force in restraining a civilian, concluded that it could not invoke a public policy exception to set aside the arbitrator's award reinstating the police officer, based on the arbitrator's determination that the officer's only infraction amounted to conduct unbecoming an officer, for which a two-week suspension without pay was imposed. [61-65] IRELAND, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on May 10, 1996.

The case was heard by *Robert H. Bohn,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Michael J. Akerson* for the defendant.

*David F. Grunebaum (Joseph A. Sarno, Jr.,* with him) for the plaintiff.

The following submitted briefs for amici curiae:

*Marcelino La Bella* for city of Boston & others.

*Andrew M. Fischer* for Police Practices Coalition & others.

SOSMAN, J. The present appeal arises out of an arbitration award, which reinstated the defendant, Terrance Thompson, to his position as a police officer with the city of Lynn. Instead of the discharge sought by the city for Thompson's alleged use of excessive force, the arbitrator determined that Thompson's only infraction amounted to conduct unbecoming an officer, for which the arbitrator imposed a two-week suspension without pay. The city sought review of the arbitrator's award in the Superior Court, where a judge vacated the award on the ground that

Thompson's reinstatement violated public policy. On appeal, the Appeals Court affirmed the judgment of the Superior Court. *Lynn* v. *Thompson*, 50 Mass. App. Ct. 280 (2000). We granted Thompson's application for further appellate review. We now reverse, and order that judgment enter for the defendant affirming the arbitration award.

1. *Facts*. On May 11, 1994, the city discharged Thompson based on three charges stemming from an involuntary commitment of a patient on September 15, 1993. Those charges were (1) use of more physical force than was necessary in the application of handcuffs, resulting in injury to the person being handcuffed[1]; (2) failure to cooperate with the investigation of the incident[2]; and (3) conduct unbecoming an officer in connection with both the incident and the investigation.[3] The parties submitted to arbitration the following issues: "Was there just cause for the discharge of the grievant, Terrance Thompson? If not, what shall the remedy be?" After six days of hearings, the arbitrator concluded that only the third charge (conduct unbecoming an officer) had been proved, and that the appropriate discipline for that infraction was a two-week suspension. The arbitrator's conclusion was based on the following factual findings.

Thompson was employed as a police officer with the city for nineteen years. A series of seven civilian complaints had been filed against him back in 1984. On one of those complaints, the police department "exonerated" Thompson of any wrongdoing; on five others, the department determined that the complaints were "unsubstantiated"; and on the remaining complaint, the department determined that the complaint was "part-substantiated," but imposed no discipline on Thompson.

Thompson was later named as a defendant in a civil rights

---

[1]The rules of the police department prohibit "[t]he use of more physical force than that which is necessary to accomplish a proper police purpose."

[2]Department rules require that an officer "truthfully state the facts in all reports as well as when he appears before any judicial, departmental or other official investigation" and "cooperate fully in all phases of such investigations."

[3]Department rules prohibit "[a]ny specific type of conduct which reflects discredit upon the member as a police officer, or upon his fellow officers, or upon the police department he serves."

action for injuries sustained by a civilian when Thompson used excessive force in applying handcuffs. In 1992, after jury trial, a judgment was entered against the city in the amount of $100,000.[4] The city imposed a disciplinary suspension on Thompson based on this incident, but that suspension was reversed by an arbitrator.[5]

---

[4]The city's brief explains that the original jury award was in the amount of $100,000, but the judgment was later amended. The amended judgment reflects the jury's findings that Thompson had used excessive force; that the city had a "practice, policy or custom of failing to take adequate steps to discipline, supervise and train Terrance Thompson," which caused the violation of the plaintiff's civil rights; and that the city was negligent. Compensatory damages were awarded in the amount of $28,700, plus punitive damages against Thompson in the amount of $30,000.

The city's brief states (in multiple places) that this earlier incident of excessive force also resulted in a broken arm, but the city provides no citation to anything in the record below that identifies the nature of that plaintiff's injuries. We have searched the entire record presented to us, and find in it no basis on which to draw any conclusion regarding the nature or the extent of the injuries sustained as a result of the prior incident. For reasons that are unclear, the Superior Court judge's memorandum of decision refers to the earlier incident as resulting in a broken arm, and the Appeals Court's decision adopted that same reference. *Lynn* v. *Thompson*, 50 Mass. App. Ct. 280, 281-282, 286, 288 (2000).

The requirement that a party provide "an appropriate and accurate record reference" for each and every fact set forth in the brief (Mass. R. A. P. 16 [e], as amended, 378 Mass. 940 [1979]) is not an idle technical requirement. Among other things, it prevents parties from exaggerating or distorting the facts as presented below, or from inserting into the analysis on appeal facts that are simply nonexistent. We have, in an abundance of caution, checked the records of the Federal court relating to the earlier civil rights action. Albert Howard *vs.* Terrance Thompson, Civil Action No. 90-11213-H (D. Mass., May 20, 1992). The plaintiff in that case did not sustain a "broken arm" or even allege that he had suffered a "broken arm." Rather, he claimed that, at the time Thompson placed him in handcuffs, he was recovering from recent surgery to his shoulder; that he so advised Thompson; that Thompson nevertheless cuffed his hands behind his back, thereby causing some reinjury to that shoulder; and that he therefore did not heal fully and properly from the earlier shoulder surgery.

The city's assertion that the earlier civil rights action resulted in a verdict against it stemming from Thompson's use of excessive force is supported by the record. Its assertion that that excessive force caused a broken arm is not supported by the record and is, according to the records from that case, an assertion that could not have been supported.

[5]There was no written decision by that arbitrator, and the city did not seek further review of that arbitration award. The arbitrator who ruled in

On September 15, 1993, Thompson was dispatched to the apartment of a woman (whom we shall refer to as "E.R.") following reports that E.R. had been threatening various family members. Thompson was accompanied by Officer Steven Anderson, and later joined by Sergeant John Karuzis. At the scene, Sergeant Karuzis determined that E.R. should be transported to a psychiatric hospital on an involuntary commitment. An ambulance was summoned.

While waiting for the ambulance to arrive, E.R. was sitting in a chair in the living room, smoking a cigarette. The family members whom she had been threatening had left the apartment, and she was no longer an imminent threat to them. However, the arbitrator found that E.R. was not "under control." E.R. told the officers that she would not go to the hospital, and threatened that she would not go "without a fight." At one point, E.R. grabbed a set of keys and a cigarette lighter from a nearby table. Thompson, of the view that these items were potential weapons, grabbed E.R.'s left arm and tried to pry her fingers open to remove the lighter. Meanwhile, Anderson took hold of E.R.'s right arm, and E.R. dropped the keys out of her right hand. Sergeant Karuzis ordered Anderson and Thompson to place E.R. in handcuffs.[6]

Anderson began placing a cuff on E.R.'s right arm, while Thompson was grappling with E.R.'s left arm and hand to remove the lighter. The arbitrator credited the officers' testimony that E.R. was thrashing about in the chair while they held her by the arms. Although he also credited E.R.'s testimony that she

Thompson's favor on that matter was not the same arbitrator who issued the decision presently under review.

[6]Although the arbitrator concluded that the officers were not in any danger from E.R. at the time, he credited Thompson, Anderson, and Karuzis that they had a legitimate reason for wanting to dispossess her of the keys and cigarette lighter prior to the arrival of the ambulance. The city contended that Thompson had no need to approach E.R. at all, but the arbitrator noted that Sergeant Karuzis, the ranking officer at the scene, had ordered that E.R. be handcuffed and had endorsed Thompson's assessment that the objects should be removed from E.R.'s hands. As such, the arbitrator concluded that Thompson had not unjustifiably "inflamed the situation" by approaching E.R. to remove the items.

told Thompson he was hurting her,[7] he credited the testimony of Thompson and Anderson that they did not hear any such statement. The arbitrator's assessment was that, in the "chaotic state of affairs," with the officers' "focus on controlling [E.R.'s] hands" and Thompson "concentrating on removing the objects from her hands," Thompson did not hear E.R.'s warning to the effect that he was hurting her arm. In the course of this struggle, while Thompson had a hold of E.R.'s left arm, E.R.'s left arm broke.[8]

Thompson introduced expert testimony from an orthopedic surgeon to the effect that E.R.'s medical condition (in particular, her medications) would likely cause "deterioration of a person's bone structure" and "loss of bone mass," affect her "fracture threshold," and make her bones "more susceptible to fractures." The arbitrator credited this testimony, noting that it "cast serious doubt" on the city's assertion that E.R.'s arm had broken from the application of excessive force.

The arbitrator concluded that the evidence did not support the charge of excessive force, and indeed that Thompson had been "exonerated of the charge of excessive force." He rejected the city's assertion that Thompson had "lost his self control," "intended to harm [E.R.]," or retaliated against her for her "verbal outbursts towards the police." Rather, he concluded that Thompson's "actions were solely motivated to take the items away from [E.R.'s] hand," and that Thompson had not used excessive force in doing so.

The arbitrator also addressed the city's concern that the continued employment of Thompson exposed the city to liability for civil rights violations. He noted that "[t]here may be

---

[7]E.R.'s husband, who was present in the room at the time, testified that he heard E.R. make such a statement.

[8]E.R. claimed that her arm broke while Thompson had her arm held up, bent backward, in the process of trying to open her fist. Thompson claimed that he had succeeded in prying E.R.'s fingers open (at which point E.R. dropped the lighter) and was bringing her arm down to her side when the arm broke. The arbitrator did not resolve this dispute as to exactly how or when E.R.'s arm broke. He did conclude that the fracture occurred as part of Thompson's maneuvers connected with the removal of the items from E.R.'s hands, not as part of any attempt to handcuff her. It was Anderson, not Thompson, who was in the process of placing a cuff on E.R.'s right wrist when E.R.'s left arm broke.

a certain point where an employer decides that because an employee is often the defendant in civil rights actions and continuously places the City and Department in [*sic*] risk of civil right [*sic*] judgments, that the employer has the right to discharge an employee." However, he concluded that Thompson did not have such a record. The civilian complaints from 1984 had not been substantiated, and, while the 1992 civil rights action had caused monetary loss to the city, the arbitrator noted that the prior arbitration had found that Thompson's suspension for that earlier incident had been "unwarranted." Thus, Thompson's official personnel record reflected no prior discipline, and the arbitrator concluded that Thompson had a nineteen-year unblemished career. As such, in the arbitrator's view, there was no "pattern of callous rogue behavior" that would justify Thompson's discharge.

The arbitrator also rejected the charge that Thompson had failed to cooperate in the investigation of this incident. Characterizing Thompson's postincident report as "brief" and containing "grammatical errors," he found nothing untruthful in the report and noted that Thompson had never been asked to provide any "supplemental report."

The arbitrator did conclude that the charge of conduct unbecoming an officer had been proved, as Thompson's "handling of this mentally unstable woman was lacking in sensitivity." However, in the arbitrator's view, "[l]ack of sensitivity" on a single occasion was "not a dischargeable offense." Beyond that reference to "lack of sensitivity," the arbitrator did not identify any other conduct by Thompson that amounted to "conduct unbecoming an officer," nor did he identify with any further precision what acts or statements of Thompson he considered "lacking in sensitivity."[9] For that conduct unbecoming an officer, the arbitrator imposed a two-

---

[9]At the hearing before the arbitrator, E.R. testified that, while waiting for the ambulance to arrive, Thompson was smoking and was letting the ashes fall on the floor. E.R. told Thompson not to smoke if he could not keep the ashes off her floor, to which Thompson replied, "[W]hy not[?] [Y]ou are." She also testified that, after her arm broke, Thompson refused to give his name. E.R. and her husband testified that, when E.R. then told Thompson that she was going to sue him, he responded, "[S]o what[.] I am already being sued." These remarks, which displayed callous indifference to a mentally ill

week disciplinary suspension and ordered Thompson reinstated with back pay.

2. *Events subsequent to the arbitration.* The city filed an action in the Superior Court seeking to set aside the arbitrator's award. In its complaint, the city alleged that a Federal civil rights action had been filed against Thompson stemming from the incident involving E.R., and that that matter was still pending. The city later amended its complaint to state that, on or about January 16, 1997, the city had settled the civil rights suit for the amount of $350,000, which amount was to be paid entirely by the city. The amended complaint annexed a copy of the settlement agreement, which reflects that the named defendants in the action included Thompson, Anderson, Karuzis, and the city. In exchange for the payment of $350,000, E.R. and her husband agreed to release their claims against all defendants. The settlement agreement recites that "[a]ll parties agree that this is a compromise of disputed claims and that settlement of these claims does not constitute an admission of liability by any party."

The city and Thompson filed cross motions for summary judgment with respect to the enforceability of the award reinstating Thompson. A judge in the Superior Court allowed the city's motion and vacated the arbitration award on the ground that it violated public policy. The judge's analysis was as follows: "[T]he arbitrator made a finding of conduct unbecoming an officer, the conduct occurred in the course of the officer's employment duties, and the conduct posed a special risk to the public. The court must therefore respect the City of Lynn's public safety concerns regarding reinstatement of an officer who has broken the arms of two citizens while attempting to handcuff them,[10] and whose conduct has resulted in two 42 U.S.C. § 1983 claims against the City, one resulting in a judgment against the City and one still pending."

On Thompson's appeal, the Appeals Court agreed that the arbitrator's award violated public policy and therefore affirmed the judgment of the Superior Court. *Lynn* v. *Thompson,* 50

---

woman whom Thompson had seriously injured, would certainly qualify as "lacking in sensitivity."

[10]But see note 4, *supra.*

Mass. App. Ct. 280 (2000). Framing the issue as "whether the arbitrator in this case has acted against public policy in reinstating an officer who has twice broken the arms of citizens with whom he was dealing in the performance of his duties,[11] the last incident characterized as 'conduct unbecoming an officer,' and whose actions resulted in claims against him and his employer in Federal court for violations of 42 U.S.C. § 1983," *id.* at 286, the Appeals Court concluded that Thompson's reinstatement violated public policy. The arbitrator's decision "permits the continued presence on the police force of someone whose past and current conduct permits a strong inference that members of the public will be placed at risk of serious physical harm by an individual whose conduct is unbecoming an officer. The city should not be compelled to reinstate an individual who has, in the rather routine situation of this case, failed to exercise restraint and judgment in determining appropriate conduct for a police officer and where his conduct has resulted in serious injury." *Id.* at 288. "[T]wo incidents of like nature, resulting in serious injury to members of the public, suffice to show that Thompson's continuing as a police officer poses a special risk of violent injury to the public and that the city-employer has been, and will continue to be, made 'an accessory to the wrongdoing.' " *Id.* at 288-289, quoting *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l*, 861 F.2d 665, 671 (11th Cir. 1988), cert. denied, 493 U.S. 871 (1989).

3. *Discussion.* Unlike our review of factual findings and legal rulings made by a trial judge, we are strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing. "A matter submitted to arbitration is subject to a very narrow scope of review. Absent fraud, errors of law or fact are not sufficient grounds to set aside an award."[12] *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990). *School Comm. of Waltham* v. *Waltham Educators Ass'n*, 398 Mass. 703, 705 (1986). *Greene* v. *Mari & Sons Flooring Co.*, 362 Mass. 560, 563 (1972). "Even a grossly erroneous [arbitration] decision is binding in the absence of

[11]But see note 4, *supra.*

[12]There is no allegation of fraud in the present case.

fraud." (Citation omitted.) *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth.*, 363 Mass. 386, 390 (1973). "An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned; it may appear foolish. Yet, it may not be subject to court interference." *Delta Air Lines, Inc.* v. *Air Line Pilots Ass'n, Int'l, supra* at 670.[13]

We are thus bound by the arbitrator's findings and conclusions in this case, no matter the extent to which we may believe that they are "grossly erroneous." *Trustees of Boston & Me. Corp.* v. *Massachusetts Bay Transp. Auth., supra.* Those findings include the express determination that Thompson did *not* use excessive or unnecessary force in restraining E.R. Rightly or wrongly, the arbitrator found that Thompson was justified in using force to extract the cigarette lighter from E.R.'s hand, that he did not apply an excessive amount of force when he held up her arm and pried open her fingers, and that it was E.R.'s exceptionally fragile bones and her own "thrashing about" that caused her injury. The arbitrator concluded that Thompson had been "exonerated" of the charge of excessive or unnecessary force, and we must accept that conclusion for purposes of our analysis.

The city seeks to set aside this arbitration award on the ground that it violates public policy. See *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 603-605 (2000); *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 16-19 (1995). To meet the criteria for application of the public

---

[13]The city asks that we deviate from this long-standing precedent and adopt a scope of review akin to G. L. c. 30A, § 14, when reviewing an arbitration award involving public sector employment. To date, our extremely deferential review of arbitration awards has not been limited to the private sector. See, e.g., *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 603 (2000); *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93*, 420 Mass. 13, 15 (1995); *Plymouth-Carver Regional Sch. Dist.* v. *J. Farmer & Co.*, 407 Mass. 1006, 1007 (1990); *School Comm. of Waltham* v. *Waltham Educators Ass'n*, 398 Mass. 703, 705 (1986). The Legislature has identified the extremely limited grounds on which courts may vacate or modify arbitration awards, and it has not, in those statutory provisions, drawn any distinction between public and private sector arbitration. G. L. c. 150C, §§ 11, 12. We reject the suggestion that we should enlarge the scope of our review of arbitration decisions in cases involving public entities or public employees.

policy exception, the public policy in question "must be well defined and dominant, and is to be ascertained 'by reference to the laws and legal precedents and not from general considerations of supposed public interests.' " *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93, supra* at 16, quoting *W.R. Grace & Co.* v. *Local Union 759, Int'l Union of United Rubber, Cork, Linoleum & Plastic Workers*, 461 U.S. 757, 766 (1983). "The public policy exception does not address 'disfavored conduct, in the abstract, but [only] disfavored conduct which is *integral to the performance of employment duties*' " (emphasis in original). *Id.* at 17, quoting *Delta Air Lines Inc.* v. *Air Line Pilots Ass'n, Int'l, supra* at 671. "Finally, we require[] a showing that the arbitrator's award reinstating the employee violates public policy to such an extent that the employee's conduct would have required dismissal." *Bureau of Special Investigations* v. *Coalition of Pub. Safety, supra* at 605, citing *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93, supra* at 19.

The Superior Court judge and the Appeals Court held that the reinstatement of Thompson would violate public policy, and that the arbitration award could therefore be set aside under the standards announced in *Massachusetts Highway Dep't* v. *American Fed'n of State, County & Mun. Employees, Council 93, supra*. However, they did so only by the expedient of ignoring the arbitrator's finding that Thompson had not used excessive or unnecessary force. They treated the arbitrator's holding that Thompson had engaged in "conduct unbecoming an officer" as a euphemism for the officer's having used excessive force and broken E.R.'s arm. Thus, they concluded that it would violate public policy to reinstate an officer whose unbecoming conduct posed a risk of physical injury to the public. *Lynn* v. *Thompson, supra* at 288. While the arbitrator was vague as to precisely what conduct of Thompson was "lacking in sensitivity" and therefore was "unbecoming an officer," that finding of "conduct unbecoming an officer" cannot be treated as equivalent to a finding of excessive force. Such an interpretation of the arbitrator's decision would be expressly contrary to his repeated, explicit findings that the charge of excessive or unnecessary

force had not been proved and that Thompson had been "exonerated" of that charge.

By reference to Thompson's status as a defendant in two civil rights actions, including one emanating from this same incident, the Superior Court judge and the Appeals Court also assumed that Thompson's unbecoming conduct constituted a violation of 42 U.S.C. § 1983. Again, however, this is precisely what the arbitrator decided had *not* been proved. In concluding that Thompson had not exerted unnecessary or excessive force, and that E.R.'s arm had broken while Thompson was exerting only a lawful and permissible degree of force, the arbitrator did not find any conduct on Thompson's part that would amount to a violation of E.R.'s civil rights.

One may well take issue with the arbitrator's analysis. The conclusion that an officer, whose record includes a civil rights judgment against himself and the city for excessive force (including an award of $30,000 in punitive damages), nevertheless has an unblemished record because another arbitrator determined that Thompson should not be disciplined for that incident, appears notably unsound. Similarly, the conclusion that force sufficient to break a person's arm, even the arm of a person with fragile bones, is not "excessive" when the person does not even pose a current danger to the officers is a conclusion that seems indefensible. Finally, common sense would dictate that the city would not voluntarily pay E.R. $350,000 to settle her civil rights claim unless there were significant evidence supporting that claim. Yet, we are not free to ignore the arbitrator's conclusions merely because they appear unsound, poorly reasoned, or otherwise flawed.

Accepting the arbitrator's conclusions, as we must, we are confronted with an officer who made insensitive remarks to a mentally unstable and, ultimately, seriously injured woman. Insensitive remarks, however offensive they may be, do not cause physical injury. From the arbitrator's conclusion that there was merely "insensitive" conduct that was unbecoming an officer, one cannot conclude that Thompson poses an ongoing risk of physical injury to members of the public. It may be distasteful to keep such an officer on the force, but it does not violate public policy.

Effectively, the Superior Court judge and the Appeals Court held that it violated public policy to continue the employment of a police officer who had twice injured citizens by the excessive use of force, finding as a source of that public policy 42 U.S.C. § 1983 (1994), and the city's own regulations against the use of "[u]nnecessary" physical force. We need not parse the application of the public policy exception to such a scenario, because it is a factual scenario that the arbitrator expressly determined had not been proved. There being no basis on which to set aside that express determination, there is no basis for invoking the public policy exception, and thus no basis on which we may set aside this particular arbitration award.

Accordingly, we reverse the judgment and order that judgment be entered in favor of the defendant affirming the arbitrator's award.

*So ordered.*

IRELAND, J. (concurring). If the facts of the case were those reported by both the Superior Court and the Appeals Court, *Lynn* v. *Thompson*, 50 Mass. App. Ct. 280, 280-284, 286-288 (2000), I would reach the same conclusion for the same reasons. To my way of thinking, an arbitrator's award reinstating a police officer in the face of conclusive evidence that the officer inflicted excessive force on multiple occasions, would violate public policy. However, given that the evidence before us does not support such findings, see *ante* at 63-65, I concur.