376                      83 Mass. App. Ct. 376 (2013)

O'Brien *v.* New England Police Benevolent Association, Local 911.

MICHAEL V. O'BRIEN[1] *vs.* NEW ENGLAND POLICE
BENEVOLENT ASSOCIATION, LOCAL 911.

No. 12-P-155.

Suffolk. December 10, 2012. - March 1, 2013.

Present: BERRY, FECTEAU, & CARHART, JJ.

*Arbitration,* Police, Collective bargaining, Authority of arbitrator. *Public Policy. Municipal Corporations,* Police, Collective bargaining. *Police,* Discharge, Collective bargaining. *Public Employment,* Police, Termination, Collective bargaining.

A Superior Court judge properly allowed the defendant's motion to confirm an arbitration award, where the award did not violate public policy, in that the arbitrator's award of reinstatement of a police officer was not inconsistent with the finding that the officer had acted reasonably under the circumstances and had not violated the rights of certain teenagers, used excessive or improper force, or improperly used his firearm. [380-383]

CIVIL ACTION commenced in the Superior Court Department on August 13, 2009.

The case was heard by *Kimberly S. Budd,* J.

*Tim D. Norris* for the plaintiff.

*Peter J. Perroni* for the defendant.

FECTEAU, J. The plaintiff, the city manager of the city of Worcester (city), appeals from a judgment of the Superior Court allowing the defendant's motion to confirm an arbitration award. After hearing, the arbitrator, having found that a police officer's actions were reasonable and did not justify his termination "for cause," ordered the city to reinstate and make whole the officer, who had been terminated for actions that the city alleged constituted gross misconduct. The plaintiff contends that the arbitrator's decision infringes on the city's managerial preroga-tive and otherwise violates public policy by requiring the city to

---

[1] In his capacity as the city manager of the city of Worcester.

retain an officer who (i) violated three teenagers' constitutional rights and (ii) engaged in felonious conduct by assaulting the teenagers without cause. The plaintiff also argues that the arbitrator exceeded his authority under the applicable collective bargaining agreement (CBA) by improperly interpreting and applying various statutory, regulatory, and other administrative rules incorporated therein. The judge was not persuaded that the arbitrator's decision to reinstate the officer amounted to a violation of public policy and confirmed the arbitration award. We affirm.

*Background.* From the arbitrator's decision we draw the following facts, in summary fashion. On the evening of April 7, 2007, Worcester police Officer David Rawlston, who was on injury leave and in his home on Tory Fort Lane in Worcester with his wife and child, received a telephone call from his neighbors informing him that they had seen three unidentified teenagers lurking about his house and his driveway, looking into his automobiles, and moving toward his backyard. Rawlston retrieved his department-issued handgun and a flashlight. After searching the interior of his house, Rawlston met his neighbors outside in his driveway, where they pointed out several teenagers a few houses up the street and identified those individuals to Rawlston as the ones they had earlier seen outside Rawlston's home. The teenagers then began walking back down the street toward Rawlston, and as Rawlston attempted to illuminate them with his flashlight, they "fanned out" so that they could not all be seen at the same time. Based on his training and experience, Rawlston perceived the oncoming teenagers as a threat to himself and his neighbors; he raised his gun, identified himself as a police officer, and ordered the teenagers to drop to the ground and lie on their stomachs. The teenagers complied. As Rawlston was securing one of the teenagers, he inadvertently hit the teenager in the back of the head with his revolver. He may also have kicked, presumably inadvertently, another of the teenagers. There were no injuries. At that point, the police arrived, having been summoned earlier by the neighbors. The additional officers interviewed the teenagers and released them.

Rawlston grieved the termination decision as authorized by the then-operative CBA, which allowed for an employee's elec-

tion between arbitration and a hearing before the civil service commission under G. L. c. 31. The arbitrator, in a lengthy and thorough decision, disagreed with every general fact and legal conclusion of significance on which the decision to terminate Rawlston was based.[2] Among other things, the arbitrator concluded that the teenagers lied about why they were in the residential area and that they intended mischief; that Rawlston reasonably feared for his and his neighbors' safety when the teenagers "fanned out"; that Rawlston had good cause to draw his weapon; that Rawlston's hitting one teenager in the back of the head with his weapon and possibly kicking another were accidental and resulted in no injuries; that Rawlston did not use unnecessary force or assault the teenagers; that Rawlston's stopping the teenagers, ordering them to the ground, and searching them was based on good cause suspicion; that Rawlston never "lied" to his superiors and that the superiors simply misunderstood his statements;[3] and that, in short, the city did not

---

[2]The plaintiff, as appointing authority, notified Rawlston of the following grounds for the termination:

> "You did not undertake these actions for any valid purpose; instead, you sought to enforce your own brand of neighborhood justice. This is completely inconsistent with the public trust bestowed upon you with your appointment to the position of police officer in the City of Worcester. You utilized your police training and service weapon to threaten, detain and assault these youths, and you used your position as a police officer to attempt to evade responsibility for your actions. You compounded your mistake by giving untruthful statements to the officers who responded to this incident, and you failed to give a truthful and complete report in response to [the police chief's] order to you. . . . Based upon the evidence presented at the hearing and the facts found by the Hearing Officer, I find that you have engaged in serious misconduct with respect to your behavior towards the three teenagers . . . and your untruthful statements during the investigation of that incident. I find these offenses to be so injurious to the public's confidence in its police department that they warrant your discharge from employment as a City of Worcester police officer . . . ."

[3]As to the city's claim of untruthfulness, Rawlston's supervisor testified to the effect that Rawlston told him that he personally had seen the teenagers peering into his windows and cars. Rawlston did not so indicate in his own routine report, indicating instead that it was the neighbor who saw the teenagers peering into the cars. The arbitrator concluded that Rawlston's supervisor was mistaken, and that Rawlston did not make the statement, attributing it to an error in transmission of the neighbor's information through the dispatcher to the responding officers.

demonstrate that Rawlston engaged in misbehavior or that there otherwise existed "good cause" for his termination. As the arbitrator summarized:

> "In conclusion, I am satisfied that the evidence and testimony presented to me warrant the conclusion that the version of events advanced by Officer Rawlston and supported by other witnesses should be accepted. I am further satisfied that Officer Rawlston did not precipitate the events of that confrontation, but rather responded to the provocative movements of those three individuals back down Tory Fort Lane toward their victims. Officer Rawlston, by virtue of those circumstances, was denied the full spectrum of equipment and image that is inherent in the expectation of a continuum of force. I am satisfied that he applied his scant resources in a reasonable manner given the fact that he was outnumbered and had no reason to believe that these persons had engaged in merely a trespass. While he had no proof of a felony, he had no reason to rule out that option until an investigation revealed otherwise. Given the above, I am satisfied that the City has failed to meet its burden with respect to all alleged violations of rules and regulations.
>
> ". . .
>
> "My findings in this case are substantially at odds with the findings of the Hearing Officer and, hence, with the decision of the [plaintiff] who adopted those findings. I am satisfied that there was not just cause for the termination of Officer Rawlston, and he is to be reinstated with full back pay and benefits, less any and all outside earnings or unemployment compensation."

The matter then proceeded to the Superior Court where, in a well-reasoned memorandum of decision, the judge confirmed the award. In essence, the judge was not persuaded that the arbitration award "contravenes public policy" and invades managerial prerogative, observing that such contentions rely upon assumptions that Rawlston, in fact, engaged in serious misconduct toward the teenagers on that night and then interfered with the ensuing investigation by making untruthful statements

— assumptions that were specifically rejected by the arbitrator. Instead, the arbitrator neither found, as a matter of fact, nor concluded, as a matter of law, that Rawlston had engaged in misconduct. Accordingly, in confirming the arbitration award, the judge concluded, properly, that she lacked the authority to "second guess" the arbitrator's factual findings or legal conclusions.

*Discussion.* Pursuant to art. 14, § 1, of the governing CBA, Rawlston could not "be removed, dismissed, discharged, suspended, reprimanded or disciplined except for just cause." He elected binding arbitration, pursuant to art. 14, § 6, of the CBA, rather than appeal to the Civil Service Commission.[4] The case of *Lynn* v. *Thompson*, 435 Mass. 54, 61-62 (2001), cert. denied, 534 U.S. 1131 (2002), instructs:

> "Unlike our review of factual findings and legal rulings made by a trial judge, we are strictly bound by an arbitrator's findings and legal conclusions, even if they appear erroneous, inconsistent, or unsupported by the record at the arbitration hearing. A matter submitted to arbitration is subject to a very narrow scope of review. Absent fraud, errors of law or fact are not sufficient grounds to set aside an award. Even a grossly erroneous [arbitration] decision is binding in the absence of fraud. An arbitrator's result may be wrong; it may appear unsupported; it may appear poorly reasoned;

---

[4]General Laws c. 150E, § 8, as amended through St. 1989, c. 341, § 118, states in relevant part:

> "The parties may include in any written agreement a grievance procedure culminating in final and binding arbitration to be invoked in the event of any dispute concerning the interpretation or application of such written agreement . . . ; provided that any such grievance procedure shall, wherever applicable, be exclusive and shall supercede any otherwise applicable grievance procedure provided by law; and further provided that binding arbitration hereunder shall be enforceable under the provisions of chapter one hundred and fifty C and shall, where such arbitration is elected by the employee as the method of grievance resolution, be the exclusive procedure for resolving any such grievance involving suspension, dismissal, removal or termination notwithstanding any contrary provisions of sections thirty-nine and forty-one to forty-five, inclusive, of chapter thirty-one, section sixteen of chapter thirty-two, or sections forty-two through forty-three A, inclusive, of chapter seventy-one."

it may appear foolish. Yet, it may not be subject to court interference" (quotations and citations omitted).[5]

As the foregoing quotation demonstrates, the legal standards governing a court's review of an arbitrator's decision are quite circumscribed.[6]

Like the municipality in the case of *Lynn* v. *Thompson, supra*, the plaintiff here seeks to set aside the arbitration award on the ground that it violates public policy. "We apply a stringent, three-part analysis to establish whether the narrow public policy exception requires us to vacate the arbitrator's decision." *Boston* v. *Boston Police Patrolmen's Assn.*, 443 Mass. 813, 818 (2005). It seems clear that the city's claim meets the first two of three criteria for application of the public policy exception.[7] The critical issue here is the third: whether "the arbitrator's award reinstating the employee violates public policy to such an extent that the employee's conduct would have required dismissal." *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. 601, 605 (2000). This factor cannot be met "by the expedient of ignoring the arbitrator's finding" that Rawlston had acted

---

[5]Compare the standard for judicial review of a final decision of the Civil Service Commission, which, pursuant to G. L. c. 31, § 44, is governed by the provisions of G. L. c. 30A, § 14. "Review of conclusions of law is de novo. The commission's factual determinations must be supported by substantial evidence, meaning such evidence as a reasonable mind might accept as adequate to support a conclusion. A reviewing court must consider the entire administrative record and take into account whatever fairly detracts from its weight. We defer, however, to the credibility determinations made by the hearing officer." *Andrews* v. *Civil Serv. Commn.*, 446 Mass. 611, 615-616 (2006) (quotations and citations omitted).

[6]Even within the confines of such limited judicial review, we observe, nonetheless, that in this case, the arbitrator set forth his reasoning in a thoughtful, comprehensive, and lengthy decision; from all that appears of record, the decision has ample factual grounding and does not appear to be "erroneous, inconsistent, or unsupported by the record at the arbitration hearing." *Lynn* v. *Thompson, supra* at 61.

[7]First, the "policy in question must be well defined and dominant, and is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interests." *Lynn* v. *Thompson*, 435 Mass. at 63 (quotation omitted). Second, "[t]he public policy exception does not address disfavored conduct, in the abstract, but [only] disfavored conduct which is integral to the performance of employment duties." *Ibid.* (quotation omitted).

reasonably under the circumstances and had not violated the rights of the teenagers, nor used excessive or improper force, nor had improperly used his firearm. *Lynn* v. *Thompson*, 435 Mass. at 63.

The city's reliance on *Boston* v. *Boston Police Patrolmen's Assn.*, *supra*, is misplaced. As the Supreme Judicial Court stated: "To prevail, the city must therefore demonstrate that public policy requires that [the officer's] conduct, as found by the arbitrator, is grounds for dismissal, and that a lesser sanction would frustrate public policy. The question to be answered is not whether [the officer's conduct] itself violates public policy, but whether the agreement to reinstate him does so. If an award is permissible, even if not optimal for the furtherance of public policy goals, it must be upheld." *Id.* at 819 (quotations and citations omitted). Furthermore, as we stated in *Boston* v. *Boston Police Patrolmen's Assn.*, 74 Mass. App. Ct. 379, 381 (2009), quoting from *Bureau of Special Investigations* v. *Coalition of Pub. Safety*, 430 Mass. at 603-604, "given the 'strong public policy favoring arbitration . . . the judiciary must be cautious about overruling an arbitration award on the ground that it conflicts with public policy.' "

In *Boston* v. *Boston Police Patrolmen's Assn.*, 443 Mass. at 819, unlike the case at bar, the arbitration award was vacated as a violation of public policy because the arbitrator ordered reinstatement in spite of having made findings showing egregious conduct, including "that [the officer] had falsely arrested two individuals on misdemeanor and felony charges, lied in sworn testimony and over a period of two years about his official conduct, and knowingly and intentionally squandered the resources of the criminal justice system on false pretexts." See *Boston* v. *Boston Police Patrolmen's Assn.*, 74 Mass. App. Ct. at 380 (in vacating the arbitrator's award of suspension and reinstatement instead of termination, the court considered it significant that "[t]he arbitrator concluded that [the officer's] conduct . . . was 'offensive, way out-of-line and worthy of substantial discipline' ").

Here, the factual and legal underpinnings necessary to the application of the public policy exception are lacking. The arbitrator did not issue an award of reinstatement that flies in the face

of factual findings of misconduct; there is no inconsistency between the findings of the arbitrator and his award of reinstatement.

*Judgment affirmed.*