NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-728

ESSEX COUNTY SHERIFF'S DEPARTMENT

vs.

ESSEX COUNTY CORRECTIONAL OFFICERS ASSOCIATION.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Essex County Sheriff's Department (department), seeks to vacate an arbitration award in favor of the defendant union, Essex County Correctional Officers Association (union), and one of the union members, Joseff Messina. In 2019, the department suspended Messina for three days without pay, based on Messina's abuse of sick leave, both during 2019, and historically. Messina grieved the suspension, and an arbitrator overturned it, reasoning, among other things, that the collective bargaining agreement with the union required the department to demonstrate that Messina had been "physically able to work" on the dates that the department claimed he had abused sick leave, and that the department had not carried that burden.

A Superior Court judge confirmed the arbitrator's decision. On appeal to this court, the department argues that the arbitrator "exceeded [his] powers," G. L. c. 150C, § 11 (a) (3), in particular, by adopting a construction of the collective bargaining agreement that is contrary to its plain and unambiguous language. As the department acknowledges, however, our review of the propriety of an arbitration award is quite limited. See G. L. c. 150C, § 11; School Dist. of Beverly v. Geller, 435 Mass. 223, 228 (2001) (Geller). While there can be rare circumstances where an arbitrator so departs from the language of a collective bargaining agreement that the arbitrator has exceeded his or her authority, Geller, supra, that is not this case. Here, although the agreement was not a model of clarity, the arbitrator's construction "draws its essence from the collective bargaining agreement" (citation omitted). School Comm. of Marshfield v. Marshfield Educ. Ass'n, 84 Mass. App. Ct. 743, 755 (2014). While we may well have reached a different conclusion as to the agreement's construction, it is not our role under G. L. c. 150C and the case law to substitute our judgment for the arbitrator's, even on questions of contract interpretation. For these reasons, we affirm the judgment confirming the award.

Background. Messina has been employed by the department as a correctional officer for over twenty years. As of the time of

2

his grievance, he worked at the department's Middleton corrections facility, and had achieved the rank of sergeant.

Over his years with the department, Messina had accrued sick leave time under the terms of the collective bargaining agreement. Messina also had a rather remarkable record of using that sick time. As of the hearing, he had accrued more than 2,200 hours of sick leave since the year 2000, and had used all but ten hours of that allotted time. The arbitrator observed, wryly, that Messina had "made good use" of his sick time. The department was more direct -- in its view, Messina had compiled "one of the most egregious records of sick leave abuse in the [d]epartment's history."

Under the agreement, union members are subject to progressive discipline for engaging in sick leave abuse: step 1, verbal counselling or a written warning; step 2, a final written warning; step 3, suspension without pay for up to three days; and step 4, termination for "just cause." Prior to the hearing, Messina had been subject to step one and step two discipline, in October and November of 2018. Thereafter, in approximately the first seven months of 2019, Messina took twelve days of sick leave. Also relevant here, three of Messina's sick days occurred on Sundays, and three occurred on days before or after Messina's scheduled days off. The department thereafter suspended Messina for sick leave abuse in

3

August 2019, eventually citing his chronic use of sick leave (both over the course of his career and in the first seven months of 2019), his pattern of using sick leave on Sundays, and his unsubstantiated use of sick days on days before or after his scheduled days off.[1]  Messina grieved the suspension, and the grievance was submitted to arbitration.

Before the arbitrator, the question was whether the department established "just cause" for imposing the suspension. That issue, in turn, depended on the provisions of the collective bargaining agreement regarding "sick leave abuse." Under Article 10 of the agreement,

> "sick leave abuse shall mean any instance where a bargaining unit member fails to report for a regular work shift and uses a sick leave day when said member is physically able to work including but not limited to the following examples:
>
> "1.  Unsubstantiated sick leave usage before or after scheduled days off on three (3) separate occasions within a six (6) month period;
>
> "2.  Sick leave usage on a day where authorized time off was requested but not approved;
>
> "3.  Sick leave usage following a regular pattern such as every Saturday during the summer;
>
> "4.  Sick leave to accommodate other employment;

---

[1] As the arbitrator noted, the department's initial "disciplinary notice d[id] not specify the precise contractual theory on which it [was] premised."  However, the department argued the above bases before the arbitrator.

4

"5.  Extensive sick leave usage without a serious medical illness, resulting in all, or nearly all sick days being used; and

"6.  Any other instance of improper sick leave usage, which the Employer may identify" (emphasis added).

The arbitrator concluded that the suspension was unsupported by just cause.  To do so, the arbitrator first had to construe the above language, to determine what constituted "sick leave abuse," and how it could be proved.  Although the arbitrator recognized that the agreement's examples of sick leave abuse "seemingly . . . do[] not consider . . . whether the employee was sick," he interpreted those examples to be "subordinate" to the agreement's general definition of sick leave abuse -- that is, using a "sick leave day when [an employee] is physically able to work."  The arbitrator accordingly determined that to prove sick leave abuse, the department had to "demonstrate[] that the employee used sick leave when physically capable of working," and that the department had not met that burden in attempting to prove sick leave abuse under examples three and six, supra.  Nor, in the arbitrator's view, was the suspension supported under example one -- "[u]nsubstantiated" use of sick leave before or after scheduled days off -- because in his view the department unjustifiably refused to credit telehealth doctors' notes that

5

Messina submitted to verify certain absences.[2]  Finally, the arbitrator rejected the department's argument that Messina's "[e]xtensive sick leave usage without a serious medical illness" provided just cause for the suspension (example five), reasoning (in part) that the department offered no evidence that Messina's leaves had occurred "without a serious medical illness."

Discussion.  The department urges that the award must be vacated, because the arbitrator "exceeded [his] powers" and authority by misconstruing the collective bargaining agreement, citing G. L. c. 150C, § 11 (a).  In particular, the department argues that the arbitrator ignored or flagrantly misconstrued the agreement's language by imposing on the department the burden of proving that Messina was well enough to work on the

---

[2] It is somewhat unclear whether the arbitrator's conclusion that the department was required to prove Messina's physical ability to work applied to each of the six examples, or whether the arbitrator construed example one not to include that requirement.  The arbitrator described example one as "stand[ing] on a different contractual footing."  Nonetheless, the department apparently interprets the arbitrator's award as placing on it "the burden of proving Messina was physically able to work," regardless of example, and frames its argument in that light (as does the union).  Such a construction is supported by the arbitrator's description of the "examples" as "subordinate to" the "introductory" contractual language that he interpreted as requiring the department to prove Messina's physical ability to work.  We will address the issue as it is framed by the parties -- that is, whether the arbitrator exceeded his authority by holding that the department was required to prove Messina's physical ability to work under each of its advanced theories -- although our conclusion would be unaffected if the arbitrator had construed example one not to require proof of physical ability to work.

6

days that he was absent.  Instead, the department argues, proof that meets any one of examples one through six in the agreement's definition of sick leave abuse constitutes conclusive evidence of sick leave abuse.  Put differently, the department argues that all it was required to show was what is described in those examples, and not also that Messina was physically able to work when he took the leave.  Thus, the department argues that where it showed the factual basis of example number five -- "[e]xtensive sick leave usage without a serious medical illness, resulting in all, or nearly all sick days being used" -- it showed sick leave abuse regardless of whether it showed that Messina was physically able to work on each day.  Indeed, as the department points out, requiring it to prove that an employee was physically capable of working on each day of his or her "[e]xtensive sick leave usage" would saddle it with a difficult if not impossible burden.

Were it not for our standard of review, we might well agree that the department's construction is the better one, in that it more sensibly expresses the agreement as a whole.  But here the parties contracted for an arbitrator to decide the issues arising under their collective bargaining agreement, including issues of contractual interpretation, making our scope of review "very narrow."  See School Comm. of Norton v. Norton Teachers' Ass'n, 23 Mass. App. Ct. 1002, 1003 (1987), citing G. L.

c. 150C, § 11 (a). Absent allegations of fraud, we do not address the correctness of the arbitrator's factual or legal conclusions, but only whether the arbitrator exceeded his authority. See id. To be sure, an arbitrator exceeds his authority by "ignor[ing] the plain words of [a] contract" (citation omitted). Sheriff of Suffolk County v. AFSCME Council 93, Local 419, 67 Mass. App. Ct. 702, 706 (2006). But if "there is room for doubt or interpretation on the question, then the issue properly lies within the broad authority conferred upon arbitrators of civil disputes." Grobet File Co. of Am., Inc. v. RTC Sys., Inc., 26 Mass. App. Ct. 132, 134-135 (1988). In such circumstances, "an arbitrator's award is entitled to judicial respect insofar as it draws its essence from the collective bargaining agreement." School Comm. of Needham v. Needham Educ. Ass'n, 398 Mass. 709, 713 (1986).

The agreement here is sufficiently ambiguous that, as is evident from the arbitrator's reasoning, one cannot say that he ignored the language of the contract. On the one hand, "sick leave abuse" is defined as "any instance where a bargaining unit member . . . uses a sick leave day when said member is physically able to work" -- thereby suggesting that to prove sick leave abuse, the department is required to show an employee's physical ability to work (emphasis added). On the other hand, an employee's ability to work seemingly does not

8

factor into the "examples" of sick leave abuse listed in the agreement. Example three, for instance, appears to consider only whether sick days "follow[] a regular pattern," regardless of whether an employee was well enough to work on those days. And under example five -- "[e]xtensive sick leave usage without a serious medical illness, resulting in all, or nearly all sick days being used" -- it similarly appears not to matter whether the employee was able to work on each day that leave was taken. There accordingly is a conflict between the agreement's general definition of sick leave abuse and the examples incorporated therein -- that is, there is "room for doubt or interpretation " as to what the department must show. Grobet File Co. of Am., Inc., 26 Mass. App. Ct. at 135.

Where the interpretation of the sick leave abuse provision was properly before the arbitrator, the question on appeal is not "whether the arbitrator['s] interpretation of the collective bargaining agreement was correct," School Comm. of W. Springfield v. Korbut, 373 Mass. 788, 792 (1977), but whether the award draws its essence from the agreement, School Comm. of Waltham v. Waltham Educators Ass'n, 398 Mass. 703, 706-707 (1986). Here, the arbitrator's award meets that requirement. The arbitrator did not ignore "clear and unequivocal language" in the agreement. Contrast School Comm. of Hanover v. Hanover Teachers Ass'n, 435 Mass. 736, 741 (2002). Nor did the

9

arbitrator read language into the agreement.  Contrast Sheriff of Suffolk County, 67 Mass. App. Ct. at 706.  Instead, the arbitrator looked to the language of the agreement, determined that there was a tension between the general definition of sick leave abuse and the enumerated examples, and construed Article 10 of the agreement, as "a whole," to mean that an employee's physical ability to work is an element of sick leave abuse.  That interpretation was not "substantially implausible or irrational."  School Comm. of Needham, 398 Mass. at 713.  In short, while we may have construed the agreement differently, "the arbitrator's [award] shows that he was faithful to his obligations," and "[h]is conclusion is not so implausible as to justify our overturning it."  Concerned Minority Educators of Worcester v. School Comm. of Worcester, 392 Mass. 184, 188 (1984).

Our decision should in no way be construed as approving of or justifying sick leave abuse by public employees.  Even putting aside the issue of the agreement's language, however, we note that the department could have aided its position by presenting a more fulsome case.  For one thing, the department did not articulate which theory of sick leave abuse justified Messina's suspension until late in the disciplinary process, which, as the arbitrator noted, rendered the "precise basis [of the suspension] . . . somewhat of a mystery and in some

10

respects, . . . a moving target."  The department also fell short by summarily rejecting as illegitimate certain doctors' notes that Messina provided to validate some of his absences, rather than taking some fairly obvious steps to investigate the notes' authenticity.  Moreover, when Messina claimed that he had timely substantiated absences occurring in March and July of 2019 by providing doctors' notes to certain of his supervising officers (who allegedly had then "lost" the notes), the department failed to call those officers at the hearing to rebut Messina's claim.  Finally, with respect to example five, the department did not focus on showing that Messina's historical sick leave had been taken "without a serious medical illness" -- a requirement that existed even had the arbitrator not construed the agreement as requiring proof of Messina's physical ability to work.[3]

---

[3] We see no merit to the department's contention that the arbitrator's award violates public policy here.  While public policy is a ground on which an arbitrator's award may be vacated, that exception is "narrow."  See O'Brien v. New England Police Benevolent Ass'n, Local 911, 83 Mass. App. Ct. 376, 381 (2013).  It should be evident from our discussion above that the department did not prove a sufficiently compelling case for one to conclude that the arbitrator's decision sanctioned "fraudulent" use of sick leave by a public employee.  Cf. Lynn v. Thompson, 435 Mass. 54, 64 (2001).

For the foregoing reasons, and in light of our standard of review, we affirm.

Judgment affirmed.[4]

By the Court (Blake, Englander & Walsh, JJ.[5]),

*Joseph F. Stanton*

Clerk

Entered:  May 9, 2023.

---

[4] We deny the union's request for appellate fees and costs.  See Fronk v. Fowler, 456 Mass. 317, 326-327 (2010) ("the Appeals Court has considerable discretion over when to award appellate fees and costs").

[5] The panelists are listed in order of seniority.